[No. 80214-9.   En Banc.]
Argued June 12, 2008.      Decided November 20, 2008.

JEFF GRIFFIN, *Petitioner*, v. THE THURSTON COUNTY BOARD OF HEALTH, *Respondent*.

52

*Matthew B. Edwards* (of *Owens Davies, PS*), for petitioner.

*Edward G. Holm, Prosecuting Attorney*, and *Jane D. Futterman* and *Elizabeth Petrich, Assistants*; and *Bruce D. Carter*, for respondent.

¶1 OWENS, J. — Petitioner Jeff Griffin submitted an on-site sewage system (OSS) application for a small lot on Steamboat Island in Thurston County (County). The Thurston County Board of Health (Board) determined that Griffin had not met "all requirements" of the former Thurston County Sanitary Code (1999) (TCSC or Code), as provided by TCSC article IV, section 21.4.5.3 for owners of under-sized lots, and thus he did not qualify for an OSS permit. At issue in this case is the meaning of "all requirements" in TCSC article IV, section 21.4.5.3.

¶2 The superior court reversed the Board's decision. The Court of Appeals reversed the superior court. We affirm the Court of Appeals decision on other grounds. Though we agree with Griffin that "all requirements" include the alternatives provided in the Code, we hold that Griffin is not entitled to an OSS permit under the facts presented here.

## FACTS

¶3 Griffin owns a 2,825-square-foot, waterfront lot. The lot is less than one-quarter the size normally required for an OSS. Griffin proposes to build a 1,600-square-foot, two-bathroom house on the property.

¶4 Griffin submitted an OSS permit application, which included six OSS components that required either modified setback distances or what the County refers to as "waivers" of TCSC provisions. A Thurston County Public Health and Social Services Department (Department) health officer approved all six of the components and approved the permit.

¶5 Griffin's neighbors, Bruce Carter and others, appealed the health officer's determination to the Department. A department hearing officer reversed the health officer's approval and denied the permit. The hearing officer concluded that because the OSS design required "a substantial number of waiver requests and horizontal setback reductions," Griffin could not meet "all requirements" of the

Code, as provided in section 21.4.5.3. Administrative Record (AR) at 44.

¶6 Griffin appealed to the Board, which determined that the only issue before it was whether "the application . . . met all other requirements other [sic] than minimum land area as required by [section] 21.4.5.3." AR at 3. The Board then concluded that an OSS applicant could not meet "all requirements" of the Code if the application used "waivers, setback adjustments or other modification of the rules." *Id*. The Board affirmed the hearing officer's decision.

¶7 Griffin appealed to the Thurston County Superior Court pursuant to the Land Use Petition Act (LUPA), chapter 36.70C RCW. The Honorable Gary Tabor granted Griffin's petition, reversed the Board, and ordered the County to issue the OSS permit.

¶8 The Court of Appeals, Division Two, reversed the superior court in a published opinion. *Griffin v. Thurston County Bd. of Health*, 137 Wn. App. 609, 622, 154 P.3d 296 (2007). The court reasoned that "[i]f 'all requirements' included waivers and setbacks, the ['all requirements'] language would be meaningless and superfluous." *Id*. at 618.

¶9 Griffin petitioned for discretionary review on a number of issues, and we granted review only on the issue of interpretation of the "all requirements" language of the TCSC. *Griffin v. Thurston County Bd. of Health*, 163 Wn.2d 1011, 180 P.3d 1290 (2008).

## ANALYSIS

*Standard of Review*

¶10 This case involves a land use decision, and thus judicial review is governed by LUPA. RCW 36.70C-.030. We sit in the same position as the superior court, *Isla Verde International Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 751, 49 P.3d 867 (2002), and we apply the LUPA standards directly to the administrative record that was

before the Board, *see id.*; *Kahuna Land Co. v. Spokane County*, 94 Wn. App. 836, 841, 974 P.2d 1249 (1999). We review the findings of the Board and do not give deference to the superior court's findings.

■ ■ ¶11 LUPA allows us to "grant relief only if the party seeking relief has carried the burden of establishing that one of the standards [in RCW 36.70C.130(1)(a)-(f)] has been met." RCW 36.70C.130(1). These standards include:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

> (d) The land use decision is a clearly erroneous application of the law to the facts;

*Id.* The meaning of county code language is an issue of law that we review de novo under subsection (b), the "error of law" standard. *See Isla Verde*, 146 Wn.2d at 751. We review factual findings for substantial evidence under subsection (c). Substantial evidence is evidence sufficient to convince a rational, unprejudiced person. *Id.* at 751-52.

*Interpretation of County Codes*

■ ■ ¶12 We interpret local ordinances, such as the TCSC, in the same way that we interpret statutes. *See Ford Motor Co. v. City of Seattle, Executive Servs. Dep't*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007), *cert. denied*, 128 S. Ct. 1224 (2008). We look first to the text of a statute to determine its meaning. *Kilian v. Atkinson*, 147 Wn.2d 16, 20-21, 50 P.3d 638 (2002). We may also discern plain meaning from related provisions and the statutory scheme as a whole. *Tingey v. Haisch*, 159 Wn.2d 652, 657, 152 P.3d 1020 (2007). If statutory language is unambiguous, we need not employ canons of statutory construction. *Kilian*, 147 Wn.2d at 20.

*The Meaning of TCSC Article IV, Section 21.4.5.3*

¶13 TCSC article IV, section 21.4.5 provides that the health officer may

[p]ermit the installation of an OSS, where the minimum land area requirements or lot sizes cannot be met, only when all of the following criteria are met:

21.4.5.1  The lot is registered as a legal lot of record created prior to January 1, 1995; and

21.4.5.2  The lot is outside an area of special concern where minimum land area has been listed as a design parameter necessary for public health protection; and

21.4.5.3  The proposed system meets all requirements of these regulations other than minimum land area.

The County concedes that Griffin satisfied the first two subsections; thus we must only determine the meaning of TCSC article IV, section 21.4.5.3.

■ ■ ¶14 The TCSC's structure has led to Griffin's disagreement with the County about what the OSS regulations "require." As an example, section 10.1 outlines "minimum horizontal separations," commonly known as "setbacks." Table I in section 10.1 lists items requiring setback (i.e., building foundation) and certain OSS components (i.e., septic tank) and outlines the number of feet of setback (five-foot setback of septic tank from building foundation). Some of the setback measurements contain qualifying language. For instance, the five-foot setback for septic tank to building foundation corresponds to footnote 6, which reads, "[t]he health officer may allow a reduced horizontal separation to not less than two feet where the . . . building foundation is up-gradient." TCSC art. IV, § 10.1, tbl. I n.6. The Board and the Court of Appeals held that provisions such as footnote 6 essentially "waive" the requirements, and therefore OSS petitioners who use them cannot meet "all requirements" of the TCSC. Griffin argues, and the superior court agreed, that provisions like footnote 6 are not

waivers but alternative setbacks and standards specifically articulated in the Code and that OSS petitioners who utilize them meet "all requirements" of the Code.

¶15 The plain language of TCSC article IV, section 21.4.5.3 directs that a small-lot OSS petitioner satisfy each and every[1] requirement of the TCSC (other than minimum lot size) to qualify for an OSS permit. The meaning of the word "requirement" is the central issue. The verb "require" means "to demand as necessary or essential (as on general principles or in order to comply with or satisfy some regulation)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1929 (2002). A "requirement" is, of course, "something required." *Id.*

¶16 Under this definition, "requirements" unambiguously include specifically articulated alternatives. Where the Code explicitly provides more than one method of satisfying a particular provision, we cannot say that only the first method that happens to be listed is essential to satisfy the regulation on its own. The scope of the "requirement" is defined by all of the articulated methods taken together, not solely by the first or most restrictive on the list. For example, the building foundation/septic tank setback requirement, in its entirety, provides a choice of either a five-foot setback or approval by a health officer of a smaller setback based on the up-gradient location of the foundation.

¶17 The County argues that allowing small-lot owners to use the Code's articulated alternative requirements renders the "all requirements" language in TCSC article IV, section 21.4.5.3 superfluous. Section 21.4.5.3 specifies that small-lot owners must comply with "all requirements" in order to receive OSS permits, but the County points out that presumably all owners of lots of *any size* must also comply with "all requirements" of the Code. To have meaning, the section 21.4.5.3 "all requirements" language must

---

[1] "[A]ll" means "every member or individual component of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 54 (2002). "In the absence of a given definition, we turn to a standard dictionary to ascertain the plain and ordinary meaning of a term." *Qwest Corp. v. City of Kent*, 157 Wn.2d 545, 553, 139 P.3d 1091 (2006).

differentiate small-lot owners from standard-sized-lot owners in some way. As Griffin points out, the general waiver provisions in TCSC article I, section 13 and article IV, section 24.1 give meaning to the language. Article I, section 13 provides that "[w]henever a strict interpretation of this Code would result in significant hardship, a person may request a waiver of the provision causing hardship." Article IV, section 24.1 is substantively the same.[2] These waivers do not articulate specific methods of complying with any given provision; rather, they represent an overarching mechanism for exemption from any specific requirement. Waiver recipients do not "comply with or satisfy" provisions; instead, they are excused altogether from those provisions. Standard-sized-lot owners may receive waivers, while small-lot owners may not.

¶18 The Board erroneously interpreted the law when it concluded that " '[a]ll (other) requirements' means that an application for an OSS on a too-small lot should satisfy all requirements . . . without having to result [sic] to waivers, *setback adjustments*, or other *modifications of the rules*." AR at 3 (emphasis added); *see* RCW 36.70C.130(1)(b).[3] Adjustments and alternatives specifically articulated in any given Code provision are part of the "requirement" of that provision. Small-lot OSS petitioners who use these adjustments or alternatives meet the "requirements," while those petitioners who must use hardship waivers or other generalized

---

[2] TCSC article IV, section 24.1.2 reads, in part:

The hearing officer as specified in article I may grant a waiver from specific requirements in this article for OSS under 3500 gallons per day if:

24.1.2.1  The procedure contained in article I of the [TCSC] has been followed; and

24.1.2.2  A strict interpretation of this article will result in significant hardship; and

24.1.2.3  The waiver application contains [a description of how the waiver] is consistent with the purpose and objectives of this article.

[3] The LUPA standard of review in RCW 36.70C.130(1)(b) directs us to give "such deference as is due the construction of a law by a local jurisdiction with expertise." However, because we find that the Code is unambiguous on its face, we do not give deference to the Board's construction. *Sleasman v. City of Lacey*, 159 Wn.2d 639, 646, 151 P.3d 990 (2007) (*Sleasman* is a LUPA case. *Id.* at 641 n.2.).

waivers do not meet the individual "requirements" to which those waivers apply.

*Did Griffin Comply with "All Requirements" of the Code?*

¶19 The County argues that six components of Griffin's OSS permit application failed to meet "requirements" of the Code: one under the "water table measurements" provision,[4] one under the "design flow" provision,[5] and four under the "minimum horizontal separations" (setback) provisions.[6] The Board concluded "[t]hat the Griffins did what the Department required of them to obtain the waivers and modified setback required." AR at 3. Thus, the Board concluded that the Department properly allowed all of the "waivers" and setback modifications that Griffin received.

¶20 The remaining question is whether each of the six contested components of Griffin's OSS fell within the "requirements" of the Code. This is a legal question, which we may properly answer.

¶21 *"Water Table Measurements."* The "water table measurements" provision states that a health officer "[m]ay require" winter water table measurements and "[m]ay require" other soil and site information. TCSC art. IV, §§ 11.4.1, .2. On its face, section 11.4 does not contain "requirements." It demands nothing as "essential" to satisfying the provision, and its sections become "requirements" only if the health officer exercises her or his discretion to invoke the provisions.[7] Because the existence of the requirement depends solely on health officer discretion, if the health officer makes it known that she or he will not require certain tests or showings, those "requirements" do not exist.

---

[4] TCSC art. IV, § 11.4.1.

[5] Portions of TCSC art. IV, § 12.2.

[6] TCSC art. IV, § 10.1.

[7] There is a critical difference between code language that says that an officer "may require" something and language that says an officer "may approve" something. In the first instance, the officer's discretion determines whether the requirement exists, whereas in the second instance, the officer's approval determines whether the applicant has met an already existing requirement.

¶22 Griffin submitted a "waiver" form,[8] stating that he wished not to perform a winter water study but that he would provide "additional information." AR at 18. The health officer granted the request. Griffin did not fail to meet the "water table measurements" requirement because when the hearing officer decided not to request the measurement, the potential requirement ceased to exist. To the extent that the health officer required other information, substantial evidence shows that Griffin fulfilled that requirement by entering a report from Pacific Rim Soil & Water, Inc., and submitting to an on-site evaluation.

¶23 *Design Flow.* TCSC article IV, section 12.2.3.1 provides that "the design flow . . . shall be . . . a minimum of 240 gallons per day, unless technical justification is provided to support calculations using a lower design flow." The clause beginning with "unless" provided a specific alternative means of complying with the provision; thus the "requirement" was either 240 gallons of flow or technical justification for reduced flow. Griffin proposed a system that had only 120 gallons of flow per day, and he provided technical justification for the reduced flow. He met the requirement.[9]

¶24 *"Setbacks."* Griffin's proposed OSS had two components within the purview of footnote 6 to article IV, section 10.1, table I. Table I requires that a building foundation be 10 feet from an OSS disposal component and that a property line be 5 feet from a disposal component. Footnote 6 provides that a health officer may grant a setback of not less than 2 feet if the property line or building foundation is up-gradient from an OSS component. These requirements

---

[8] It is immaterial that the means by which Griffin requested not to perform a water table evaluation was a form labeled with the word "waiver." The critical threshold inquiry is whether the provision in question establishes a requirement at all.

[9] Carter argues in his supplemental brief that the Board erred in determining that Griffin provided "technical justification" for the reduced flow. Substantial evidence supports the Board's finding that Griffin provided "technical justification" by proposing a one-bedroom home with pump timers, alarms, and low-flow fixtures. AR at 16, 236-37.

call for 10- and 5-foot setbacks or approval from a health officer based on up-gradient location. The health officer approved the reduced setbacks because the foundation and property line were up-gradient. Griffin met the requirements.

¶25 Griffin's proposal also included a 75-foot setback from the surface water of Puget Sound. Table I requires a 100-foot setback, and TCSC article IV, section 10.3 allows the health officer to approve a reduced setback if the applicant demonstrates that the OSS has "enhanced treatment performance." TCSC art. IV, § 10.1, tbl. I; TCSC art. IV, § 10.3.2. The requirement consists of the 100-foot setback or approval of a reduced setback based on enhanced performance. The health officer approved the reduced setback based on Griffin's showing of enhanced performance in the OSS. Griffin met the requirement.

¶26 The sixth component of Griffin's application is problematic. TCSC, article IV, section 10.1, table I requires that a septic tank have a 10-foot setback from a pressurized water supply line. Griffin's septic system had a setback of only 5 feet. Griffin submitted a "Request for Waiver"[10] form to the County, asking for a 5-foot setback instead of a 10-foot setback for his "tank" to his "pressured water supply line." AR at 21.

¶27 At oral argument, Griffin asserted that TCSC article IV, section 10.1, table I, footnote 4 applies to add an alternative to the 10-foot measurement and that the Department treated his septic tank as a sewer line and approved his request under footnote 4. Footnote 4 is the only alternative means of compliance with the pressurized water supply line setback. TCSC art. IV, § 10.1, tbl. I. Footnote 4 provides that "[t]he health officer may approve a sewer transport line within 10 feet of a water supply line if the sewer line is constructed in accordance with section 2.4

---

[10] As noted above, it is irrelevant that the form was entitled "Waiver." It was a form provided by the County; thus Griffin himself did not deem the request a "waiver" application. The central issue is whether Griffin met the Code's facial requirements by complying with TCSC article IV, section 10.1, table I, footnote 4.

of [WASHINGTON STATE DEPARTMENT OF ECOLOGY, CRITERIA FOR SEWAGE WORKS DESIGN (hereinafter DOE Criteria) (No. 78-5) (rev. Oct. 1985, reprinted 1992)], as thereafter updated, or equivalent." TCSC art. IV, § 10.1, tbl. I n.4.

¶28 Footnote 4 does not apply to septic tanks. It plainly refers to sewer transport lines, not septic tanks.[11] Additionally, it requires the OSS proposal to meet the DOE Criteria, section 2.4,[12] and this section does not discuss septic tanks. Section 2.4 references the "Required Separation Between Water Lines and Sanitary Sewers." DOE CRITERIA § 2.41 (No. 78-5) (rev. Oct. 1985, reprinted 1992). These requirements consistently refer to sewer *pipes* only and do not mention tanks of any kind. *See generally* DOE CRITERIA § C1-9 (No. 98-37 WQ) (Dec. 1998).

¶29 The record does not support a finding that Griffin's request met footnote 4. Nothing in the testimony or on the form indicates that the County compared Griffin's system to the DOE Criteria. The portions of the record cited by Griffin at oral argument indicate that the County granted Griffin what it called a "Class-A Waiver" for the tank.[13] "A Class-A waiver is a waiver for which review criteria and mitigation measures have been pre-approved by the Washington State

---

[11] By all indications, sewer lines and septic tanks are distinct. The glossary defines "sewer" as "[a] pipe or conduit that carries wastewater or drainage water." JOINT EDITORIAL BD. REPRESENTING AM. PUB. HEALTH ASS'N ET AL., GLOSSARY: WATER AND WASTEWATER CONTROL ENGINEERING 335 (3d ed. 1981) (incorporated by reference in DOE Criteria at viii). In contrast, the TCSC definition of " '[s]eptic tank' " emphasizes storage rather than transport of wastewater: "a watertight pretreatment receptacle receiving the discharge of sewage from a building sewer or sewers, designed and constructed to permit separation of settleable and floating solids from the liquid, detention and anaerobic digestion of the organic matter, prior to discharge of the liquid." TCSC art. IV, § 3, at 4-12.

[12] Section 2.4 was renumbered to section C1-9.1. The section numbers changed from the 1985 version to the 1998 version that was in effect at the time of Griffin's request. *See* DOE CRITERIA (No. 98-37 WQ) (Dec. 1998); DOE CRITERIA (No. 78-5) (rev. Oct. 1985, reprinted 1992).

[13] Washington State Department of Health, *An Application Guide for Granting Waivers from State On-Site Sewage System Regulations* (Mar. 1999), explains that when local officials grant waivers from state OSS regulations, the officials must follow state criteria for doing so. It further explains that a "Class A" waiver is a waiver for which the Department of Health has articulated specific evaluation criteria and mitigation measures. *Id.* at 4.

Department of Health [(DOH)]." AR at 234, 340. A county official testified that the County used DOH standards, not the DOE Criteria. *Id.* Because the DOE Criteria are the linchpin of the footnote requirement, we can say confidently that the County did not grant Griffin's setback request under TCSC article IV, section 10.1, table I, footnote 4. Footnote 4 provides the only alternative means of satisfying the requirement; thus Griffin did not meet the requirement.

*Did the Department Have Discretionary Authority To Deny the OSS Permit*

¶30 The parties disagree about whether the Department has overarching discretionary authority to deny Griffin's OSS permit. The County points out that TCSC article IV, section 21.4.5 provides that the health officer "may" approve an OSS permit if the three enumerated conditions are met. Accordingly, the County argues, the Department could have denied the permit on a discretionary basis, regardless of whether Griffin met the requirements. Griffin argues that the County's policy is to approve all permits that meet the requirements because TCSC article IV, section 9.3.1 provides that the health officer "shall" issue a permit when the application meets the requirements of the TCSC.

¶31 We need not reach this issue because Griffin is not entitled to a permit under section 21.4.5, as outlined above. Even if we were to reach the issue of department discretion, the issue is not ripe for review at this time because the Board explicitly based its decision on the fact that Griffin had not met "all requirements" of the Code and not on the hearing officer's discretion to deny the permit.

## CONCLUSION

¶32 Griffin's analysis of the TCSC rule is correct—he can meet "all requirements" of the Code by utilizing alternative requirements articulated in the Code. However, Griffin did not satisfy the septic tank/water line setback requirement. We hold that Griffin's OSS proposal did not meet "all

requirements" of the Code and affirm, on different grounds, the Court of Appeals' holding that Griffin is not entitled to an OSS permit under the TCSC.

C. JOHNSON, MADSEN, FAIRHURST, and STEPHENS, JJ., and MORGAN, J. PRO TEM., concur.

¶33 SANDERS, J. (dissenting) —The majority hides behind a wall of confusing bureaucracy and highly suspect legal construction to deny Jeff Griffin the right to use his own private property. I would hold Griffin's on-site sewage system (OSS) septic tank permit application met all requirements of the Thurston County Sanitary Code (TCSC), including the pressurized water supply line setback, and reverse the Court of Appeals.

¶34 The majority contends Griffin failed the septic tank setback requirement. Majority at 60-63. TCSC article IV, section 10.1, table I requires a septic tank to have a 10-foot setback from a pressurized water supply line. Clerk's Papers (CP) at 109 (TCSC art. IV, § 10.1, tbl. I). The relevant part of said table I states:

| Items requiring setback | From edge of disposal component and reserve area | From *septic tank*, holding tank, containment vessel, pump chamber, and distribution box | From building sewer, collection and nonperforated distribution line[ ] |
|---|---|---|---|
| *Pressurized water supply line*[4] | 10 ft. | 10 ft. | 10 ft. |

*Id.* (emphasis added). Footnote 4 of table I provides, " 'The health officer may approve a sewer transport line within 10 feet of a water supply line if the sewer line is constructed in accordance with section 2.4 of Washington state department of ecology's "Criteria For Sewage Works Design" [(DOE Criteria)], revised October 1985, as thereafter updated, or equivalent.' " CP at 111 (quoting TCSC art. IV, § 10.1, tbl. I n.4). Griffin submitted a Thurston County waiver form,

asking for a 5-foot rather than a 10-foot setback from his septic tank to his pressurized water supply line. The majority contends TCSC article IV, section 10.1, table I, footnote 4 does not apply to Griffin's septic tank because (1) footnote 4 applies only to sewer lines not septic tanks and (2) the health inspector granted the permit under Department of Health (DOH) standards rather than the DOE Criteria as footnote 4 requires. Majority at 61-62. The majority is mistaken because (1) footnote 4 applies to all columns in table I, including septic tanks, and (2) the health inspector granted the permit as mandated by law because Griffin's septic tank met all state requirements under DOH standards (which *require* the construction of sewer lines in accordance with DOE Criteria).[14] The language is clear that DOH standards encompass the DOE Criteria. Griffin met all requirements of TCSC and accordingly was issued his permit.[15]

¶35 The majority contends footnote 4 does not apply to septic tanks. The majority then contends section 2.4 of the DOE Criteria does not discuss septic tanks, discusses only sewer pipes, and infers footnote 4 does not apply to septic tanks in any event. Majority at 61-62. However, " 'septic tank' " is defined in the TCSC, while sewer line or pipe is not. CP at 98 (quoting TCSC art. IV, § 3). Further as shown above in the relevant excerpt from table I, footnote 4 applies to all columns, including the column referencing septic tanks. CP at 109. Thus, footnote 4 applies to septic tanks because it expressly says so.

¶36 The majority also plays a bureaucracy shell game by contending the Thurston County health official compared

---

[14] TCSC art. IV, § 2: " 'The health officer shall administer this article under the authority and *requirements* of . . . WAC 246-272 [DOH on-site sewage systems].' " (emphasis added) (quoting CP at 90). Former WAC 246-272-09501, *repealed by* Wash. St. Reg. 05-15-119, *readopted as* WAC 246-272A-0210 (effective July 1, 2007), sets forth in the same format and language as that of footnote 4 of table I of TCSC article IV.

[15] "The local health officer shall . . . [i]ssue a permit when the information submitted . . . meets the requirements contained in [chapter 246-272 WAC]." Former WAC 246-272-09001(3)(a), *repealed by* Wash. St. Reg. 05-15-119, *readopted as* WAC 246-272A-0200(4)(c) (effective July 1, 2007).

Griffin's system to DOH criteria, not the DOE Criteria as required under footnote 4. Majority at 63. However, the majority correctly states the application guide for granting waivers mentions a "Class A" waiver for which the DOH has articulated specific evaluation criteria and mitigation measures. Majority at 62 n.13 (citing WASH. STATE DEP'T OF HEALTH, AN APPLICATION GUIDE FOR GRANTING WAIVERS FROM STATE ON-SITE SEWAGE SYSTEM REGULATIONS (Mar. 1999)).

¶37 Moreover, the majority adds its own words into the record, stating, "A county official testified that the County used DOH standards, not the DOE Criteria." Majority at 63 (citing Administrative Record (AR) at 234, 340). However, the administrative record reveals the truth of the testimony by the program manager for the county's environmental health division: "The design met all of the mitigating criteria listed by the State Department of Health and included extra measures for the protection of the public health, specifically . . . there was a back flow prevention device on the water line." AR at 234.

¶38 Nowhere in the record cited by the majority does the county health official ever testify that the DOE Criteria were not used. *See* AR at 234, 340. Furthermore, the county health official testified that "based on the department's review, a determination was made that [Griffin's] application and proposal met the requirements of Thurston County's sanitary code." AR at 238. Contrary to the majority's assertion that the record does not support a finding that Griffin's request met footnote 4 (majority at 62), the record speaks volumes as to Griffin's right to be issued his permit. We agree that Griffin's septic tank met all state requirements.

¶39 A Thurston County health official granted Griffin a permit for his septic tank. Various citizens appealed, and the hearing officer denied issuance of the permit. Griffin later appealed the decision of the hearing officer, and the Thurston County Board of Health affirmed. The right of citizens to use their private property requires a strict construction of limiting ordinances in favor of the property

owner. *Morin v. Johnson*, 49 Wn.2d 275, 279, 300 P.2d 569 (1956). Griffin did everything requested by the government, which in turn has strangled his private property rights in red tape.

¶40 I disagree with the majority and would reverse the Court of Appeals, holding Griffin met all of the requirements under the TCSC, including the pressurized water supply line setback pursuant to footnote 4,[16] to gain the OSS permit for his septic tank.

¶41 I dissent.

J.M. JOHNSON, J., concurs with SANDERS, J.

CHAMBERS, J., concurs in result only.

Reconsideration denied April 28, 2009.

[No. 79172-4. En Banc.]
Argued May 27, 2008.     Decided November 26, 2008.

---

[16] CP at 109 (TCSC art. IV, § 10.1, tbl. I n.4).