# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

MICHAEL DURLAND, KATHLEEN
FENNEL, and DEER HARBOR
BOATWORKS,

              Appellants,

v.

SAN JUAN COUNTY, WESLEY
HEINMILLER, ALAN STAMEISEN,
and SUNSET COVE LLC,

              Respondents.

No. 74039-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 12, 2016

SPEARMAN, J. — Wesley Heinmiller and Alan Stameisen (collectively, Heinmiller) sought after-the-fact building permits for the conversion of a storage barn into an accessory dwelling unit (ADU). San Juan County (County) issued the permits. Heinmiller's neighbors Michael Durland, Kathleen Fennell, and Deer Harbor Boatworks (collectively, Durland) challenged the permits, arguing they were improperly issued because the barn was built in violation of a setback requirement and was therefore an illegal structure. The hearing examiner determined that the barn was a legal nonconforming structure because no setback requirement applied when the barn was built and the permits were therefore properly issued. We find no error and affirm.

## FACTS

Heinmiller's predecessor in interest, William Smith, built a storage barn on his Orcas Island property in 1981. Durland bought the adjacent property in 1986 and began developing it as a boatyard and marina. Durland and Smith disputed the boundary line between their properties and in 1990, they had the properties surveyed. The survey established the property line and revealed that Smith's barn was set back only seventeen inches from that line. Smith and Durland understood the County code to require a ten foot setback from the property line resulting in a minimum distance of 20 feet between structures on adjacent properties.

Durland and Smith entered into a boundary line agreement under which Durland consented to the location of the barn and agreed not to build within 20 feet of it. The agreement provides for termination of the easement if the barn is removed or destroyed. The agreement does not address the use of the barn. Durland stated that he entered into the agreement because he believed Smith's barn would be a good buffer between his boatyard and the nearby residences. He also thought the County would look more favorably on his boatyard if he allowed Smith's building to stay where it was.

Heinmiller purchased Smith's property in 1995 and converted part of the barn to an ADU shortly thereafter. Heinmiller did not obtain building permits for the conversion or obtain a permit to use the structure as an ADU. Until about

2

2007, Heinmiller's parents lived in the main house on the property and Heinmiller used the ADU as his vacation home. After Heinmiller's father died and his mother moved to an assisted living facility, Heinmiller began to use the Orcas Island property as his primary residence.

Durland stated that, until about 2007, the barn was used mainly for storage and did not cause any problems. But then, according to Durland, the use of the barn became primarily residential. Durland stated that he received complaints about his boatyard after the barn began to be used as a residence.

The County became aware of the unpermitted conversion of the storage barn into an ADU and issued Heinmiller a notice of correction. In April 2008, Heinmiller and the County entered into an agreed compliance plan allowing Heinmiller to avoid immediate demolition. The plan required Heinmiller to remove additions to the exterior of the structure and submit applications for a shoreline substantial development permit and conditional use permit.

The compliance plan includes a statement of background information. It states that the county issued building permit No. 3276 for a storage barn in 1981. The compliance plan states that the County required the structure to be placed at least ten feet from the property line. The plan describes the barn's actual location, summarizes the Durland-Smith agreement, and states that the County recognizes the Durland-Smith agreement as a substitute for the property boundary setback.

3

In April 2009, the County and Heinmiller amended their compliance plan and agreed that Heinmiller could avoid the need for a shoreline substantial development permit and conditional use permit by modifying the ADU. By reducing the height and living area, Heinmiller could bring the structure within the definition of a "normal appurtenance" to the main house under the San Juan County Code. Clerk's Papers (CP) at 218, 221-22. Normal appurtenances are exempt from shoreline and conditional use permits.

Heinmiller performed additional work on the barn, submitted plans to reduce the height and living area, and applied for a building permit, change of use permit, and an ADU permit. The County approved the permits in November 2009.

Durland filed an administrative appeal challenging the permits. He asserted, among other arguments, that the barn violated the setback requirement when it was built and county code prohibited issuing permits for an illegal structure. Durland argued that the setback was a condition of the permit that the County issued for the barn in 1981. Heinmiller and the County took the position that the Durland-Smith boundary agreement cured the setback violation.

As evidence, Durland submitted a building inspection card for the barn marked "No. 3276." CP at 282. Durland also submitted a building plan marked with a stamp reading "[a] structures shall be minimum 10 feet from adjacent property lines. S.J. CO. 58-77." CP at 284-85. Durland submitted a copy of the

4

referenced code, San Juan County Resolution No. 58-1977, as well as a copy of the previous code, Resolution No. 224-1975.

The hearing examiner concluded that a ten foot setback applied to the barn when it was built in 1981 and that the barn violated that requirement. But the examiner dismissed Durland's claim concerning the setback as time barred. The examiner ruled that the relevant land use decision was made in the compliance plan and that Durland's objection to the decision was untimely.

On appeal to this court, Durland challenged the ruling that the setback claim was time barred. Durland v. San Juan County, 174 Wn. App. 1, 10, 298 P.3d 757 (2012) (Durland I). He also asked the court "to rule that (1) the barn was built illegally; (2) the illegality was not cured by the private restrictive covenant; and (3) therefore, permits could not be issued to modify the barn until the illegality was cured." Id. at 19 n.13. We reversed the ruling that the issue was time barred and remanded. Id. at 26. Durland's argument concerning the setback was identified as an issue for remand. Id. at 19 n.13.

The examiner held a hearing in November 2014 but left the record open for additional evidence on whether the County had authorized a departure from the setback. In January 2015, a county building official distributed a supplemental staff report to the parties and the examiner. The author of the report, John Geniuch, stated that he had investigated County records and concluded that the county did not issue a building permit for the storage barn in 1981. Geniuch

stated that the lack of building permit was proper because the county repealed permit requirements for storage structures in 1977 under San Juan County Resolution No. 58-1977. He reasoned that the 1977 resolution exempted storage structures from all regulation, including the setback requirement, and the barn on Heinmiller's property was thus legal when constructed. He also noted that the 1977 resolution provided for optional plan-checking services, and the building plan and inspection card were consistent with these services.

The county disowned Geniuch's supplemental report and asked the examiner not to admit it into evidence. The County asserted that it issued building permit No. 3276 to Smith for the storage barn and submitted a permit receipt as evidence. The County did not produce the permit.

The hearing examiner excluded Geniuch's supplemental staff report but noted that the report raised an important legal argument. The examiner concluded, as Geniuch did, that Resolution No. 58-1977 exempted storage structures from all regulation including setbacks and the barn was thus legal when built. The examiner acknowledged that the parties did not have an opportunity to address this legal argument but noted that the relevant code provisions were in the record. Because the barn was legal when built, the examiner concluded that the barn was a legal nonconforming structure. The examiner also concluded that the barn qualified as a normal appurtenance and was thus exempt from shoreline and conditional use permits.

6

The examiner concluded that it was unclear whether the County issued a building permit for the barn in 1981, but held that the issue was not dispositive. He held that, in view of Resolution No. 58-1977, the barn was legal despite any lack of permit. Conversely, he held that if a building permit was approved for the barn in 1981, that approval was a land use decision that could not now be challenged. The Skagit County Superior Court upheld the ruling. Durland appeals.

## DISCUSSION

The Land Use Petition Act (LUPA), chapter 36.70C RCW, governs judicial review of land use decisions in Washington. RCW 36.70C.030. When conducting judicial review under LUPA, this court sits in the same position as the superior court. Griffin v. Thurston County, 165 Wn.2d 50, 54–55, 196 P.3d 141 (2008) (citing Isla Verde International Holdings, Inc., v. City of Camas, 146 Wn.2d 740, 751, 49 P.3d 867 (2002)). We review the decision of the hearing examiner, the "local jurisdiction's body or officer with the highest level of authority to make the determination. . . ." RCW 36.70C.020(2).

We give substantial deference to the examiner's factual and legal determinations. Lanzce G. Douglass, Inc. v. City of Spokane Valley, 154 Wn. App. 408, 415–16, 225 P.3d 448 (2010) (citing City of Medina v. T-Mobile USA, Inc., 123 Wn. App. 19, 24, 95 P.3d 377 (2004)). LUPA provides limited grounds for reversing the examiner's decision. RCW 36.70C.130(1). As relevant to this appeal, we may only disturb the hearing examiner's decision if the examiner

7

erred in entering a finding of fact not supported by substantial evidence, in interpreting the law, or in applying the law to the facts. RCW 36.70C.130(1)(b),(c),(d).

Durland first argues that the hearing examiner erred in considering whether a setback requirement applied when the barn was built. He notes that prior to the examiner's decision on remand, all parties agreed that a 10 foot setback applied to the barn when it was built. Durland argues that the issue was thus beyond the scope of remand. We disagree.

The scope of remand is determined by the appellate court's mandate. State v. Kilgore, 167 Wn.2d 28, 42, 216 P.3d 393 (2009). The primary issue in Durland I was whether the agreed compliance plans were land use decisions for the purposes of LUPA. Durland I, 174 Wn. App. at 12-19. This court held that the compliance plans were not final land use decisions and the hearing examiner erred in dismissing Durland's challenges as time barred. Id. at 19. The Durland I court expressly declined to reach the setback issue. Id. at 19 n.13. We identified for consideration on remand Durland's arguments that (1) the barn was illegal when built, (2) the boundary line agreement did not cure the illegality, and (3) the county could not legally issue permits to modify the illegal structure. Id.

No. 74039-3-I/9

The setback issue, including the barn's legality when built, was expressly before the examiner on remand. The examiner did not exceed the scope of remand by considering the issue.[1]

Durland next argues that the examiner erred in interpreting San Juan County Resolution No. 58-1977 as repealing the setback requirement of Resolution 224-1975. The interpretation of a county code is an issue of law that we review de novo. Griffin, 165 Wn.2d at 54–55. However, we must "allow[] for such deference as is due the construction of a law by a local jurisdiction with expertise." RCW 36.70C.130(1)(b).

Ordinary principles of statutory construction apply to the interpretation of local ordinances. Griffin, 165 Wn.2d at 55 (citing Ford Motor Co. v. City of Seattle, Executive Servs. Dep't, 160 Wn.2d 32, 41, 156 P.3d 185 (2007)). In interpreting statutes, this court aims to discern the intent of the legislative body. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283

---

[1] Durland makes two other arguments that the legality of the barn, when built was not properly before the hearing examiner. Neither has merit. First, he contends that the County issued Smith a permit in 1981 with a ten foot setback condition and that the doctrine of finality precludes revisiting the terms of the permit. But the hearing examiner was unable to conclude, based on the record before him, that a permit was ever issued for the barn. Durland disputes this finding, but it is supported by substantial evidence. As noted by the hearing examiner, no permit was ever produced and the circumstantial evidence suggesting that one was issued was equivocal at best. In the absence of a finding that a permit was issued for the barn, the doctrine of finality is inapplicable. Next, Durland argues that the ten foot setback is the law of the case. He contends that the hearing examiner decided the issue in his original decision and that the decision was binding on remand. An unchallenged conclusion of law generally becomes the law of the case. King Aircraft Sales, Inc. v. Lane, 68 Wn. App. 706, 716, 846 P.2d 550 (1993) (citing State v. Slanaker, 58 Wn. App. 161, 791 P.2d 575 (1990)). But in this case, Durland asked the appellate court to consider the legality of the barn. Durland I, 174 Wn. App. at 19 n.13. We expressly identified the setback issue, including the legality of the barn, as an issue to be decided on remand. Id. The hearing examiner's decision was not the law of the case.

9

(2010) (citing Arborwood Idaho, LLC v. City of Kennewick, 151 Wn.2d 359, 367, 89 P.3d 217 (2004)). We begin with the plain meaning of the statute. Griffin, 165 Wn.2d at 55 (citing Kilian v. Atkinson, 147 Wn.2d 16, 20-21, 50 P.3d 638 (2002)). We may discern the statute's plain meaning from its text, related provisions, and the statutory scheme as a whole. Id. (citing Tingey v. Haisch, 150 Wn.2d 652, 657, 152 P.3d 1020 (2007)).

Until San Juan County enacted Resolution No. 224-1975, the County had no building code. State ex rel. Graham v. San Juan County, 102 Wn.2d 311, 313, 686 P.2d 1073 (1984). In Resolution No. 224-1975, the County adopted Washington State's uniform building code (UBC) and other State codes. Resolutions No. 224-1975, §1.02. Section 4.01 addresses setbacks between adjacent properties and states:

> No building in Group H and I occupancies and located in Fire Zone No. 3 shall be constructed within ten feet of the property line. No building in Fire Zone No. 3 may be located within ten feet of the property line unless any wall within such ten feet constitutes a one hour fire wall.

CP at 334. The barn was located in Fire Zone No. 3 when it was built in 1981. If Res. 224-75, §4.01 governed, it required the barn to be set back ten feet from the property line or be built with a firewall.

In 1977, the San Juan County commissioners repealed portions of Resolution No. 224-1975 by enacting Resolution No. 58-1977. Resolution No. 58-77 §8.01. Section 9 of the 1977 resolution concerns Class J structures, which included noncommercial storage buildings such as sheds and barns. Resolution

10

No. 58-77 §9.01. The resolution declares that, as regards Class J structures, the regulations imposed in 1975 are unreasonable:

> The commissioners of San Juan County find that the regulation of Class J structures...provided for in Resolution No. 224-1975 and the UBC unreasonably restricts the freedom of residents of San Juan County to construct such structures as accessory buildings to private residences or for agricultural purposes, that there is no pressing governmental interest served by the regulation of structures in this category, and that it is unreasonable to require any person or corporation constructing Class J structures...to pay a permit fee as a condition of constructing such structures....No permit, fee or inspection shall be required for such structures.

Resolution No. 58-1977 §9.01. The section repeals those provisions of Resolution No. 224-1975 and the UBC "which are inconsistent with this section." Resolution No. 58-1977 §9.02. Id.

Durland argues that Resolution No. 58-1977 only repealed permit, fee, and inspection requirements for Class J structures. He contends that the examiner erred in concluding that Resolution No. 58-1977 repealed all regulation of Class J structures, including the ten foot setback. We disagree.

Resolution No. 58-1977 describes the regulations imposed on Class J structures by Resolution No. 224-1975 as unreasonable and states that they restrict the freedom of the County's residents. It further declares that the government has no pressing need to regulate Class J structures. While the provision only specifically exempts storage structures from permits, fees, and inspections, the broad language indicates the intent to exempt Class J structures from all regulation.

The statutory scheme as a whole supports this conclusion. In the 1975 resolution, the County recognized that not all UBC provisions were "necessary or desirable" in a rural county. Res. 224-1975 §2.01. CP at 33. The 1975 resolution excluded single family dwellings and Class J structures from several UBC requirements.[2] Resolution No. 224-75 § 2.03, §2.09. In 1977, the County determined that, even with the exclusions and amendments, the code as adopted "regulated without sufficient justification" owner-built residences and storage structures. Resolution No. 58-1977 §8.01, 9.01. The County also determined that many structures had been built in violation of the code and the county did not have the resources to enforce code provisions. Resolution No. 58-1977 §8.01. CP 340-43.

A decision to exempt Class J structures from regulation is consistent with the County's statements that many regulations were not necessary or desirable in a rural county, that the code adopted in 1975 unreasonably restricted the freedom of county residents, and that it did not have the resources to enforce the code as adopted in 1975.

Durland raises several arguments against this interpretation. In reliance on Graham, he first asserts that our Supreme Court has already determined that San Juan County's intent in enacting the 1977 resolution was only to cut costs, not to eliminate requirements. But his reliance on that case is misplaced. In

---

[2] For example, the resolution exempted single-family residences from the requirement to have running water. Resolution No. 224-75 §2.09.

Graham, the court stated as part of its summary of background facts, that county commissioners enacted the 1977 resolution because they determined that the county "did not have the resources to enforce all the provisions of the Code." Graham, 102 Wn.2d at 313. But the issue in Graham was whether the county could validly exempt owner-built residences in San Juan County from the requirements of the state building code. The Graham court did not rule on the purpose of the 1977 resolution or address the resolution's section concerning Class J structures.

Next, Durland argues that related provisions in the 1977 resolution impose a setback requirement. He asserts that the resolution specifically requires "'a statement of the setback requirements and the applicant's agreement to comply therewith.'" Brief of Appellant at 30. But the provision he relies on, Resolution No. 58-1977 §8.03, applies to owner-built residences, not to Class J structures.

Finally, Durland argues that the hearing examiner's interpretation of Resolution 58-1977 is improper because the County has already taken the position that the setback applied and cannot now disavow that position. Durland relies on Silverstreak, Inc. v. Washington State Dep't of Labor and Industries, 159 Wn.2d 868, 154 P.3d 891 (2007), in which the court held that the Department of Labor and Industry could not bring a claim contrary to its published interpretation of a labor regulation. The Silverstreak court applied the doctrine of equitable estoppel, under which a party may not take "a position inconsistent with a previous one where inequitable consequences would result to

a party who has justifiably and in good faith relied." Id. at 887 (citing Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738 743, 863 P.2d 535 (1993)).

Durland asserts that the County stated its position by marking the building plan for the barn with a stamp reading "[a]ll structures shall be 10 feet from adjacent property line. S.J. CO. 58-77." CP at 284. He argues that the county is estopped from changing that position.

We reject Durland's argument because he fails to show the elements of equitable estoppel. Even if the County's stamp on permit documents constitutes a previous inconsistent position, Durland has not shown that he acted in reliance on that statement or that the County's current position is inequitable.

We conclude that the hearing examiner did not err in interpreting Resolution No. 58-1977 as repealing all regulation of Class J structures. The ten foot setback requirement in Resolution No. 224-1975 did not apply to the storage barn at the time it was built.

We next consider whether the examiner erred in concluding that San Juan County properly issued building, change of use, and ADU permits for the barn. Durland asserts that the County violated the San Juan County Code by issuing permits to an illegal structure. App. Br. at 31-32.

The San Juan County Code differentiates between a "nonconforming" structure and an "illegal" structure. SJCC §18.20.090, .140. An illegal structure is one that "was inconsistent with previous codes in effect when the ... structure was established." SJCC §18.20.090. A nonconforming structure is one that

complied with applicable codes when built but no longer complies because of subsequent changes in code requirements. SJCC §18.20.140; §18.40.310. The barn's location does not comply with the setback provision of the current code. SJCC §15.04.620. But because Class J buildings were unregulated when the barn was constructed, the barn did not violate a setback requirement at that time. The barn is thus a legal nonconforming structure.

A nonconforming structure "may be modified or altered, provided the degree of nonconformity of the structure is not increased." SJCC §18.40.310(D). A shoreline structure that is nonconforming in regards to a setback may be "enlarged or expanded provided that said enlargement does not increase the extent of nonconformity by further ... extending into areas where construction ... would not be allowed for new development." WAC 173-27-080. Durland makes no argument that the modifications proposed by Heinmiller and approved by the County increase the extent of the barn's nonconformity. We conclude that the examiner did not err in ruling that the permits approving modifications to the barn were properly issued.

Finally, Durland argues that the examiner erred in concluding that the barn was exempt from shoreline permitting under the Shoreline Management Act (SMA), chapter 90.58 RCW, and the County's Shoreline Master Program (SMP), SJCC §18.50. He asserts that the examiner also erred in failing to rule that a formal shoreline exemption was required.

San Juan County's SMP mirrors the provisions of the State's SMA. SJCC §18.50.010(c). Under the SMA and SMP, construction on the shoreline generally requires a shoreline substantial development permit. SJCC §18.50.020(E)(2). "[N]ormal appurtenances" to a single-family residence are exempt from the shoreline substantial development permit. SJCC §18.50.330(A), (E)(2). One accessory dwelling unit is a normal appurtenance to a single-family home, provided that the ADU covers no more than 1,000 square feet of land area, is no taller than 16 feet, and is not used as a rental. SJCC §18.50.330(E)(2), (E)3.

Durland briefly asserts that the barn is not a normal appurtenance. He argues that the barn violates the height and size requirements of SJCC §18.50.330(E)(2)(a), but he does not cite to the record for this assertion. Durland also asserts that the barn is not a normal appurtenance because it has been used for commercial purposes. Durland provides no support for this assertion. But in any case, the proper question under SJCC §18.50.330(E)(3) is not whether the structure has been used for commercial purposes but whether it will be used as a short or long term rental. The hearing examiner's decision upholding the permits is conditioned upon Heinmiller submitting a certificate, as required by SJCC §18.50.020(G), stating that the ADU is reserved for the use of his family. We conclude that the examiner did not err in finding that the converted barn is a normal appurtenance exempt from shoreline permitting.

Heinmiller requests attorneys' fees under RCW 4.84.370. The statute provides that, in a land use decision, reasonable attorneys' fees shall be

awarded "'to party who prevails or substantially prevails at the local government level, the superior court level, and before the Court of Appeals or the Supreme Court.'" Julian v. City of Vancouver, 161 Wn. App. 614, 631–32, 255 P.3d 763 (2011) (quoting Baker v. Tri-Mountain Res., Inc., 94 Wn. App. 849, 852 973 P.2d 1078 (1999)). Heinmiller prevailed before the hearing examiner and the superior court, and is thus entitled to fees here.

*Affirmed.*

Spearman, J.

WE CONCUR: