

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 APR -7 AH 9: 14

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ARTUR AND MARGARET ROJSZA, | ) | No. 69259-3-I |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF FERNDALE, a Washington municipal corporation, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 7, 2014 |
| | ) | |

VERELLEN, J. — This appeal, brought pursuant to the Land Use Petition Act chapter 36.70C RCW, concerns a dispute between the City of Ferndale (City) and Artur Rojsza, a homeowner who remodeled his house for years without a permit, then repeatedly exceeded the scope of his permit despite the City's ongoing enforcement actions. When the City required Rojsza to apply for a new permit and to provide a $30,000 performance bond, Rojsza appealed to a hearing examiner, who concluded his appeal was untimely. The Whatcom County Superior Court reversed. The City appeals. We conclude that there was no final administrative decision by the City and that Rojsza's appeal is, accordingly, premature. We reverse and remand for dismissal.

## FACTS

In 2005, Rojsza began to remodel his Ferndale home without obtaining a building permit. In 2008, he started building an adjoining clock tower, also without a permit. City of Ferndale officials issued Rojsza a notice of violation on September 18, 2009. The

City informed Rojsza that it would undertake a criminal enforcement action if Rojsza did not meet with its development personnel to obtain building permits. Rojsza did not comply.

In December 2009, the City initiated a criminal enforcement action. In conjunction with the enforcement, Ferndale prosecutor David Nelson informed Rojsza's counsel by letter that the City planned to require Rojsza to hire a structural engineer and to apply for a building permit. Rojsza agreed to take these steps and thereafter applied for a permit. Rojsza stated in his application that he would bring the earlier remodeling work into compliance and that he planned to complete the clock tower and make other additions to the southern side of the home. The City granted the permit, but Rojsza's subsequent construction work exceeded the scope of the permit.

On July 29, 2010, Jori Burnett, the City's community development director, issued a stop-work order requiring Rojsza to immediately cease work and provide engineering drawings to allow a full structural inspection. Rojsza agreed to submit updated plans by August 20. The City lifted the stop-work order. The City later agreed to extend the August 20 deadline until the end of October, then subsequently extended the deadline until May 2011.

In April and early May 2011, Burnett asked Rojsza for an update. Rojsza informed Burnett that the cited nonconforming portions of his earlier remodel work had been corrected. However, Rojsza claimed that the clock tower and southern addition were "not a part of our specific agreement" and that he did not have a time estimate for completing the tower.[1] Rojsza also requested that the City inspect the property.

---

[1] Clerk's Papers at 587.

Burnett explained that an inspection was not possible because Rojsza had not submitted engineering drawings as required. In a May 5, 2011 e-mail response, Rojsza reiterated his view that "the structural part of the project that needs to be in compliance is done" and that he considered the "completion of the clock tower addition" a "separate, independent" project.[2] Also on May 5, 2011, Rojsza telephoned the City's inspection hotline to repeat his request for an inspection.

In his May 9, 2011 e-mail, Burnett asserted that Rojsza had not met his obligations under the February 19, 2010 criminal enforcement "settlement agreement":

> While you have continued to work on this project, you have done so without periodic inspections by your structural engineer or the City. . . . As these inspections have not taken place, and as since the deadline for adherence to the settlement agreement has passed, the Prosecuting Attorney and City staff agree that the City has no other legitimate option but to pursue its enforcement action . . . .
>
> . . . .
>
> As per the building permit itself, more than 180 days has passed since your last inspection. We understand by your e-mails that you feel that you requested an inspection. However, due to the non-prescriptive method that you have elected to build this structure, the City had notified you that inspections would occur two weeks after structural drawings, architectural drawings, and a report from your structural engineer was submitted to the City. The last inspection that took place was October 18, 2010. The next legitimate request for an inspection was last week, seven months after the last inspection, and that request did not include structural engineering or reports.[3]

Two days later, Burnett sent Rojsza a letter explaining that the building permit had expired. However, he indicated that the City would continue working cooperatively with Rojsza if he met certain conditions:

---

[2] Clerk's Papers at 573.

[3] Clerk's Papers at 564.

To bring what we consider to be final closure to this ordeal and to avoid costly and lengthy litigation, the City proposes the following:

- A penalty of $500 shall be paid by you . . . for failure to comply with the intent of the agreement and to compensate the City for ongoing legal and administrative expenses.

The City will delay further enforcement action . . . provided that *all* of the following occur:

- At or prior to June 1, 2011, your structural engineer shall conduct a structural observation of the entire structure, including all elements proposed by the building permit or built subsequent to that permit's issuance.

- Within ten days of this structural observation, a report and engineered plans from the structural engineer will be submitted to the City . . . .

. . . .

- An inspection will be requested at the time of submittal of the structural observation report . . . .

- The City inspector shall conduct an inspection.[4]

Rojsza did not satisfy these conditions.

In a June 16, 2011 letter to Rojsza, Burnett set out new requirements. These required Rojsza to schedule an inspection by July 1, 2011 and to provide "building permit applications and accurate structural, engineered, and architectural plans within ten business days of the inspection."[5]

Following the structural observation, the City communicated to Rojsza that although "elements of the building . . . have been constructed without a permit," "[t]he City will not cite the Rojszas for the existing violations" provided that Rojsza submit architectural drawings by July 8, 2011 and engineering calculations and drawings by

---

[4] Clerk's Papers at 546-47.

[5] Clerk's Papers at 277.

4

August 5, 2011.[6] The letter imposed a 21-day time limit for Rojsza to complete a siding project on the house. Rojsza submitted the architectural plans as required, but did not submit engineering drawings.

On August 18, 2011, the City cited Rojsza for failing to apply for a building permit for alterations to a structure or deviating from approved plans. On August 19, 2011, Burnett reiterated in an e-mail to Rojsza's counsel that Rojsza needed to apply for a new building permit. The e-mail also stated that the City would "require that the Rojszas submit a reasonable performance bond to ensure completion [of the siding work] within the time limit set."[7] Burnett explained that

> we would expect to receive a bond amount equal to 150% of the valuation the City determines on the building permit. . . . We will expect to call that bond if the work is not completed [and inspected] within six weeks of permit issuance. . . . If the Rojszas are able to complete the work ahead of the deadline, the City would be able to release the bond.[8]

In an August 31 e-mail to Rojsza's counsel, Burnett again stated that the City would require a performance bond or assignment of savings:

> One thing that was missing from the application was an estimate of the cost of the work, including an estimate to complete the exterior siding for purpose of determining an appropriate bond/Assignment of Savings amount. . . . [In] the event that the Rojszas are unable or unwilling to complete the work in the six-week time frame after issuance, the City would be required to pay fair market value for both materials and labor in order to complete the work.[9]

Rojsza submitted application materials. On September 7, 2011, the City informed Rojsza's counsel that it was ready to issue the building permit but would

---

[6] Clerk's Papers at 1445.

[7] Clerk's Papers at 1448.

[8] Clerk's Papers at 1448.

[9] Clerk's Papers at 387.

5

require an assignment of funds or bond in the amount of $30,000. Rojsza opted not to pick up the new permit. In follow-up e-mail correspondence with Rojsza's counsel, Burnett stated that "from the City's perspective, there needs to be a new permit regardless of whether the previous permit . . . expired or not" and that Rojsza could avoid the bond requirement by simply completing the siding work.[10]

On September 16, 2011, Rojsza filed an administrative appeal. The hearing examiner concluded that Rojsza's appeal was untimely as to every issue except the specific amount of the performance bond required. The hearing examiner upheld the requirements that Rojsza obtain a new building permit and post a $30,000 performance bond or assignment of savings.

Rojsza appealed to the Whatcom County Superior Court pursuant to chapter 37.70C, the Land Use Petition Act (LUPA). The superior court reversed, concluding that Rojsza's administrative appeal was timely, that the earlier permit did not expire, that Rojsza's permit application was for an amendment to the original permit, and that the City therefore lacked statutory authority to require a performance bond.

The City appeals.

ANALYSIS

The threshold issue is whether there was any final administrative decision by the City from which Rojsza could appeal. We conclude there was not. Rojsza's appeal is therefore premature.

---

[10] Clerk's Papers at 352.

When reviewing a superior court's decision under LUPA, this court stands in the shoes of the superior court, reviewing the ruling below on the administrative record.[11] On appeal, the party who filed the petition bears the burden of establishing one of the following:

"(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

"(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

"(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

"(d) The land use decision is a clearly erroneous application of the law to the facts;

. . . .

"(f) The land use decision violates the constitutional rights of the party seeking relief."[12]

A "land use decision" is defined under LUPA as "a *final determination* by a local jurisdiction's body or officer with the highest level of authority to make the determination."[13] A land use decision is "final" for purposes of LUPA when it "'leaves nothing open to further dispute'" and "'sets at rest [the] cause of action between the parties.'"[14]

---

[11] King County Dep't. of Dev. and Envtl. Servs. v. King County, 177 Wn.2d 636, 643, 305 P.3d 240 (2013).

[12] City of Federal Way v. Town & Country Real Estate, LLC, 161 Wn. App. 17, 36-37, 252 P.3d 382 (2011) (quoting RCW 36.70C.130(1)).

[13] RCW 36.70C.020(2) (emphasis added).

[14] Durland v. San Juan County, 174 Wn. App. 1, 13, 298 P.3d 757 (2012) (alteration in original) (quoting Samuel's Furniture, Inc. v. Dep't of Ecology, 147 Wn.2d 440, 452, 54 P.3d 1194 (2002)).

The City's communication with Rojsza does not support the conclusion that any individual letter or e-mail from Burnett was a final determination or decision requiring an appeal. Rather, the correspondence reflected an ongoing collaborative effort to arrive at mutually acceptable compliance. Such efforts are laudable, but only a genuine final decision is appealable.

Land use decisions become final and appealable only if the decision finally and unequivocally settles the pending dispute. For example, in Durland v. San Juan County, this court recognized a distinction between "an interlocutory decision" made by an administrative official and a "final" decision, which "'leaves nothing open to further dispute'" and "'sets at rest [the] cause of action between parties.'"[15] "Mere decisions about the process to be followed in making a land use decision are not final land use decisions."[16] This court has also held that "[a]n agency's letter does not constitute a final order unless the letter clearly fixes a legal relationship as a consummation of the administrative process" and that "[t]he letter must be clearly understandable as a final determination of rights, and doubts as to the finality of such communications must be resolved in favor of the citizen."[17]

Most of the City's correspondence with Rojsza and his representatives was cooperative in tone. Even though Rojsza repeatedly failed to meet the requirements placed on him, the City repeatedly responded by changing the requirements and moving back the deadlines. For instance, although the May 11, 2011 letter from Burnett

---

[15] 174 Wn. App. 1, 13-14, 298 P.3d 757 (2012) (alteration in original) (quoting Samuel's Furniture, 147 Wn.2d at 452).

[16] Id. at 14.

[17] WCHS, Inc. v. City of Lynnwood, 120 Wn. App. 668, 679, 86 P.3d 1169 (2004).

declares "your building permit has expired" and later refers to "expiration of the building permit," the letter is entitled "RE: Potential Settlement Agreement" and proposes a new settlement that could culminate in dismissal of the pending citation.[18] The bulk of the letter recites history and itemizes detailed conditions of a proposed settlement. The May 11, 2011 letter provides no indication that the matter at issue has been "set at rest."[19]

A June 16, 2011 letter from Burnett details two violations and directs that "you must now comply."[20] The letter directs Rojsza to schedule an inspection and provide all necessary information, including building permit applications and accurate plans. Upon completion of these steps, if the City deems the application materials "to be complete and accurate," the City "will make the building permit available to you for issuance."[21] The letter also quotes the municipal code section governing "[a]mended construction documents" and the section on "[s]uspension or revocation."[22] Burnett recites "that it now appears that the permit was issued on the basis of incorrect, inaccurate and incomplete information" and that penalties will be imposed if Rojsza does not correct the violations.[23] This letter falls short of an express and direct communication of a decision setting the dispute to rest.

---

[18] Clerk's Papers at 544-45.

[19] See Durland, 174 Wn. App. at 13 (quoting Samuel's Furniture, 147 Wn.2d at 452).

[20] Clerk's Papers at 277.

[21] Clerk's Papers at 277.

[22] Clerk's Papers at 278-79.

[23] Clerk's Papers at 279. Contrary to the City's argument, the letter makes no express reference to a "new" permit. The multiple references to "permit application" and making the "building permit available" could just as easily be read as referring to

The September 7, 2011 e-mail from Burnett to Rojsza's attorney merely itemized fees for the permit and advised that the permit was ready to pick up and must be picked up by September 21, 2011, that the bond amount was $30,000, and that the owner had six weeks to complete exterior siding. It is understandable that a cautious owner might not want to take the risk of missing the appeal period. But consistent with the prior correspondence, the September 7, 2011 e-mail is not a decision allowing an appeal as it does not purport to resolve the dispute between the parties.

The City has not yet set forth a clear and express final decision. The communications back and forth were almost all informal, casual, and ongoing negotiations of attempts to resolve the evolving dispute. None of the communications expressly and clearly set forth a decision by the City purporting to set the dispute to rest.

Rojsza argues that this issue was not raised by the City before the hearing examiner. But we review the decision of the hearing examiner de novo. The question of whether the appeal was premature is squarely before us.[24]

We decline to further address the status of the permit and of the enforcement efforts of the City. The administrative appeal before the hearing examiner was

---

materials for an amended permit consistent with the code section on amended permits quoted in the letter. Burnett recites that the existing permit was issued on incorrect, inaccurate, and incomplete information but does not expressly state that the City has revoked the existing permit.

[24] As counsel for Rojsza acknowledged at oral argument, this court is not bound by any manifestation by the parties that a particular communication was an appealable decision. See Perkins Coie v Williams, 84 Wn. App 733, 741, 929 P.2d 1215 (1997) (party could not "reduce the scope of issues" before reviewing court by stipulation); Schneider v. Setzer, 74 Wn. App. 373, 375, 872 P.2d 1158 (1994) (parties' stipulation regarding appealability and scope of appellate review did not bind appellate court as to nature and scope of review of an arbitrator's decision).

premature, the hearing examiner's decision has no binding effect, and the LUPA appeal is appropriately dismissed.

We reverse and remand for dismissal.

WE CONCUR: